# No. 25-1102

In the United States Court of Appeals
for the Sixth Circuit

———————

# United States of America,

Plaintiff-Appellant,

v.

# Jameel Anthony Dion Tanzil,

Defendant-Appellee.

———————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 23-cr-20654 (Hon. Nancy G. Edmunds)

———————

## Reply Brief for the United States

———————

Jerome F. Gorgon Jr.
United States Attorney

Meghan Sweeney Bean
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0214
meghan.bean@usdoj.gov

# Table of Contents

Table of Authorities ................................................................. ii

Introduction ....................................................................... 1

Argument .......................................................................... 3

I.    The federal search warrant established probable cause to
      search Tanzil's phone. ....................................................... 3

      A.    Tanzil effectively concedes that the magistrate judge had a
            substantial basis to find the required nexus. ......................... 3

      B.    The federal warrant was sufficiently particular. ................. 11

II    Agents relied on the detailed federal warrant in good faith. ......... 15

Conclusion ......................................................................... 20

Certificate of Compliance with Rule 32(a) ............................................. 21

Certificate of Service ............................................................. 22

# Table of Authorities

## Cases

*Burns v. United States*, 235 A.3d 758 (D.C. 2020).................................14

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ..................................7

*Riley v. California*, 573 U.S. 373 (2014) .............................................7, 12

*United States v. Ables*, 167 F.3d 1021 (6th Cir. 1999)...........................12

*United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015).................... passim

*United States v. Castro*, 881 F.3d 961 (6th Cir. 2018).....................13, 14

*United States v. Christian*, 925 F.3d 305 (6th Cir 2019)..........................5

*United States v. Greene*, 250 F.3d 471 (6th Cir. 2001) ...........................14

*United States v. Honeysucker*, No. 21-2614, 2023 WL 142265
    (6th Cir. Jan. 10, 2023) ....................................................12, 13, 14

*United States v. Merriweather*, 728 F. App'x 498 (6th Cir. 2018) ..........18

*United States v. Neal*, 106 F.4th 568 (6th Cir. 2024) .............................15

*United States v. Nester*, No. 23-1727, 2024 WL 4615777
    (6th Cir. Oct. 30, 2024)....................................................12, 13, 14

*United States v. Peterson*, No. 23-1413, 2024 WL 4616079
    (6th Cir. Oct. 30, 2024)..................................................................10

*United States v. Reed*, 993 F.3d 441 (6th Cir. 2021) ..............................17

*United States v. Richards*, 659 F.3d 527 (6th Cir. 2011).................12, 13

*United States v. Rolling*, No. 23-1045, 2024 WL 4512532
    (6th Cir. Oct. 17, 2024).........................................................4, 18, 19

*United States v. Sanders*, 106 F.4th 455 (6th Cir. 2024)
(en banc) ................................................................... 15, 17

*United States v. Sheckles*, 996 F.3d 330 (6th Cir. 2021) ................... 9, 10

*United States v. Smith*, No. 21-1457, 2022 WL 4115879
(6th Cir. Sept. 9, 2022) ............................................ 10, 16

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018) ..................... 7, 8, 10

*United States v. White*, 874 F.3d 490 (6th Cir. 2017) ............................ 15

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) .................................... 8

# Introduction

The parties agree on several crucial points. One is that the magistrate judge could reasonably infer that Tanzil, a convicted felon, *used his cell phone* to photograph guns that he tried to illegally purchase (and was thereafter suspected of stealing) from a coworker and again *used his cell phone* to send one of those gun photos to a contact via Snapchat. Although there is no indication that Tanzil switched phones in the three months between stealing the guns and his arrest, he even admits that his Snapchat data would have been transferred to any new phone. Given these admissions, Tanzil has effectively conceded that the federal warrant established a nexus between the target offenses and Tanzil's cell phone, as necessary to support the magistrate judge's determination of probable cause.

What Tanzil calls a nexus challenge is really an argument that the federal warrant lacked particularity. Although he suggests that agents could at least search his photos and Snapchat data, he argues that they should not have been authorized to search "everything" on his phone. Although the district court did not reach this issue, the warrant was sufficiently particular because it limited the search to evidence of

specific offenses and further limited the search of Tanzil's calls to a three-month period during which he committed the target gun offenses. No more was required.

Tanzil's concessions do not end with probable cause. With respect to good faith, he admits that the federal warrant affidavit was not bare bones—he agrees it had "meat on the bones." Still, he claims that non-lawyer agents should have second-guessed the federal magistrate judge's probable-cause determination based on Tanzil's claim that the phone would exonerate him. He further claims that those agents should have questioned whether the gun photos and Snapchat data provided a basis to search the *entire* phone. But as this Court has repeatedly held, this asks too much. Here, the federal warrant included detailed allegations that were more than sufficient to support a finding of good-faith reliance.

The order suppressing evidence recovered from execution of the federal search warrant should be reversed.

# Argument

## I.     The federal search warrant established probable cause to search Tanzil's phone.

At the outset, it is worth reiterating the scope of this appeal. The government is only challenging the district court's suppression order as it relates to the *federal* search warrant. (Gov. Br., 31). Tanzil's arguments directed at the state warrant are therefore irrelevant. Similarly, because Tanzil was not charged with fraud, whether there was probable cause that his phone would contain evidence of fraud is also irrelevant. (*Id.*, 34). And even when addressing the correct issue, Tanzil misses the mark by conflating the concepts of nexus and particularity. In doing so, he effectively concedes that the nexus requirement was satisfied. As for particularity, the warrant appropriately restricted the scope of the search to evidence of specified crimes and limited the search of call records to a three-month period.

### A.     Tanzil effectively concedes that the magistrate judge had a substantial basis to find the required nexus.

The nexus requirement is not a separate Fourth Amendment requisite. Instead, it is a way to articulate the probable cause requirement that the warrant connects the evidence expected to be

3

found with the location to be searched. *See United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015); *United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *2 (6th Cir. Oct. 17, 2024), *cert. denied*, No. 24-6980, 2025 WL 1426759 (U.S. May 19, 2025).

Critically, Tanzil agrees with the government, and not the district court, that it was "reasonable" for the magistrate judge "to infer that Tanzil used a phone (not a standalone camera)" to take photos and send one via Snapchat of the four guns that he attempted to illegally purchase and was suspected of stealing from his coworker hours later. (*Compare* Tanzil Br., 27, *with* R.47: Order, 367 n.3 ("[W]hile the federal warrant noted that a witness told police that [Tanzil] book a photograph of guns . . . and sent the photo to a contact on Snapchat, there is no indication as to what type of device [he] used to take the photo.")). He also admits that the photos and the Snapchat data would "travel[] with the app" even if Tanzil upgraded his phone afterwards. (Tanzil Br., 27). By Tanzil's own admissions, then, there was a substantial basis for the magistrate judge to find a nexus between Tanzil's cell phone and evidence of the target gun offenses, under any nexus standard. *Rolling*,

2024 WL 4512532, at *3 (discussing open question of nexus for cellular phone searches).

The warrant need not have explicitly stated that Tanzil held the guns while photographing them to make the photos and Snapchat data evidence relevant to his possession of illegal (and stolen) guns. (Tanzil Br., 27–28); *United States v. Christian*, 925 F.3d 305, 310 (6th Cir 2019) ("While this is not a direct statement that Thomas was seen entering or leaving 618 Grandville, the law does not require such a direct statement. . . . Affidavits are not required to use magic words." (cleaned up)). And even magistrate were forced to find based on a missing "magic word" that Tanzil did not hold the guns at that moment, he was suspected to have stolen them from his coworker's car shortly thereafter. (Gov. Br., 17–18; R.36-2: Warrant, 224–25, ¶¶ 26–27f). This was not merely a hunch by police. Tanzil was the only person who the victim talked to about the guns in his car. (*Id.*, 224, ¶ 27b). And Tanzil, who could not legally buy a gun, possessed several guns after those four went missing. He admitted to possessing three guns owned by someone else, he was a key suspect in two shootings (one caught on video), police found guns in a home where he left his child (and other children) alone

5

inside, and they found another gun in his bedroom. (*Id.*, 223, 226, 228–29, ¶¶ 22, 24a, 29, 34).

By admitting that it was reasonable to infer that the photographs and Snapchat data would be found on his phone, Tanzil effectively concedes that the magistrate judge had a substantial basis to find the required nexus. (Tanzil Br., 26–27). His communications with his coworker attempting to (illegally) purchase guns was evidence likely to be on his phone, too. (Gov. Br., 40; R.36-2: Warrant, 239–40, ¶¶ 57–58). And that was not all that supported the magistrate judge's finding.

Tanzil's statement to police that evidence on his phone would exonerate him in a fatal shooting independently established a nexus between his phone and the target gun offenses. (*Id.*, 223, ¶ 24c; Gov. Br. 44). In maintaining otherwise, Tanzil tells only half the story. While focusing on his claim that his phone would exonerate him, he fails to mention that he also told police that he was at the murder scene on the night of the shooting. (*Compare* Tanzil Br., 25–26, *with* R.36-2: Warrant, 223, ¶¶ 24b–c). So the likelihood that Tanzil's phone was at the murder scene is not a government "inference" as he claims (Tanzil Br., 24–25), but a matter of common sense based on where he told police

he was that night. *See Riley v. California*, 573 U.S. 373, 395 (2014)

("Now it is the person who is not carrying a cell phone, with all that it

contains, who is the exception."); (R.36-2: Warrant, 239–40, ¶¶ 55, 59).

Tanzil's presence at the murder scene was corroborated by witness

accounts identifying him as one shooter who fled with another suspect

in a dark SUV. (*Id.*, 223, ¶¶ 22, 24b). Thus, it was reasonable for the

magistrate judge to find a fair probability that Tanzil's phone would

contain evidence of illegal gun possession, including location

information and his communications before, during, and after the

murder.

Tanzil admits, as he must, that neither agents nor the magistrate

judge were required to credit his claim that the phone would establish

his innocence in the murder. (Tanzil Br., 26); *District of Columbia v.

Wesby*, 583 U.S. 48, 61 (2018); *United States v. Tagg*, 886 F.3d 579, 589

(6th Cir. 2018). Rather, he argues that police needed to investigate

further to tie his cell phone to evidence of illegal gun possession. Yet

that's exactly what the police and agents did here. As detailed in the

warrant affidavit, the investigation went beyond his statements. For

example, witnesses told police that Tanzil was at the scene, shot the

7

victim with a specific gun, and fled with someone else in an SUV. (R.36-2: Warrant, 221–23, ¶¶ 17–23). Police found guns—including the specific gun that the witness mentioned—in a home near the murder scene where Tanzil's child was alone with other children inside. (*Id.*, 223, ¶ 22). Therefore, the district court was wrong to transform Tanzil's self-serving statement that his phone contained evidence exonerating him of murder into a shield that barred searching it for evidence of illegal gun possession. Adopting this reasoning would place law enforcement in an impossible position any time a defendant says a location or device contains exculpatory evidence—search it and risk suppression of any evidence found or refrain and risk sanction for failure to investigate and disclose it. (Gov. Br., 49); *see Tagg*, 886 F.3d at 589 ("[T]he ultimate plausibility of an innocent explanation cannot be used to snuff out the objectively suspicious inference that can be drawn from the facts presented to a magistrate."); *cf. Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (holding when assessing probable cause to arrest, law enforcement must take into account "both the inculpatory and exculpatory evidence" and cannot "simply turn a blind eye" toward evidence favorable to the accused).

Tanzil tries to distinguish this Court's decisions in *Bass* and *Sheckles* to no avail. (Tanzil Br., 31–33). While it is true that the defendants in those cases were charged with conspiracies, neither the communal nature of the charges nor the length of the investigations were determinative of probable cause. Instead, the fact that the defendant "used cell phones to communicate" about his crimes and was talking on the target phone "possibly" to his co-conspirators at the time of his arrest drove the decision in *Bass*. 785 F.3d at 1049. Likewise, in *Sheckles*, it was the fact that phones were used to arrange the drug crimes that mattered. *United States v. Sheckles*, 996 F.3d 330, 339 (6th Cir. 2021).

The warrant here similarly established a fair probability that Tanzil's phone would contain evidence of the target gun offenses. As already discussed, he used it to snap photos of guns he intended to illegally purchase and sent a photo to someone else on social media just before he was suspected of stealing them. (R.36-2: Warrant, 224–25, ¶¶ 26–27f). The agents had reason to believe that the phone would contain evidence *relevant* to illegal gun possession on the night of the fatal shooting, even if that evidence would exonerate him of murder, as

9

he claimed. (*Id.*, 223, ¶¶ 24b–c). And like in *Bass*, Tanzil had his phone with him when he was arrested, which supports that he carried it around with him. (*Id.*, 223, ¶ 25).

Moreover, as in *Bass* and *Sheckles*, the affidavit here included several examples of criminal coordination between Tanzil and others. (*Id.*, 221–24, ¶¶ 17–22, 26–27f). Agent Weston's training and experience (*id.*, 239–41, ¶¶ 57–58, 60–61) and common sense dictates this communication would have happened by phone. *Tagg*, 886 F.3d at 585 (magistrates may rely on "common-sense conclusions about human behavior"); *see also United States v. Peterson*, No. 23-1413, 2024 WL 4616079, at *5 (6th Cir. Oct. 30, 2024) (resolving appeal on good faith, but noting reasonable inference that evidence would be on cell phone because the affidavit described "the coordination of multiple people and vehicles during and after the shooting"); *United States v. Smith*, No. 21-1457, 2022 WL 4115879, at *8 (6th Cir. Sept. 9, 2022) (resolving appeal on good faith, but noting "a fair probability that Smith and Walker used their cell phones to communicate . . . because that is how people in our modern society generally communicate when they do anything together"). That Tanzil was not charged in a "vast" or "international"

conspiracy is immaterial. (Tanzil Br., 32–33). The rhetorical question he poses about drug traffickers has the same common-sense answer when turned against him: "How else would [people on the run after committing a fatal shooting or engaged in illegal gun transactions] communicate?" (Tanzil Br., 33).

## B.    The federal warrant was sufficiently particular.

Although Tanzil frames his argument as an issue of nexus, his complaint is really about the warrant's scope. (Tanzil Br., 6 (framing issues presented as whether the warrant to search the "entire contents" of the phone satisfied the nexus requirement and whether the good-faith exception saves a "dragnet search" of a cell phone); *id.* at 18 (challenging nexus between "entire phone" and evidence of gun offenses); *id.* at 27 (challenging search of "entire contents of the phone"); *id.* at 34 (describing Tanzil's "right to be free from limitless rummaging" through his phone); *id.* at 35 (arguing that the warrant lacks a nexus "between possessory firearms offenses and *everything* on the phone"). Because the district court found probable cause lacking, it declined to decide the particularity question. (R.47: Order, 367 n.2). But the warrant here was sufficiently particular.

While probable cause "establishes the basis" for a search, particularity "tailors the search's breadth." *United States v. Nester*, No. 23-1727, 2024 WL 4615777, at *2 (6th Cir. Oct. 30, 2024). "A warrant is valid when it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Honeysucker*, No. 21-2614, 2023 WL 142265, at *4 (6th Cir. Jan. 10, 2023) (citing *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999)). For electronic devices, the Sixth Circuit has "taken a flexible approach . . . based on the difficulties in sifting through electronic evidence." *Nester*, 2024 WL 4615777, at *7. That difficulty stems from the fact that "modern cellphones may contain a litany of information, in some cases equivalent to a personal computer." *Bass*, 785 F.3d at 1049 (citing *Riley*, 573 U.S. at 393). And "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011). For that reason, this Court "has recognized the impracticality of imposing exacting specificity requirements" for electronic devices like cell phones. *Nester*, 2024 WL 4615777, at *5; *Bass*, 785 F.3d at 1049. And the particularity analysis for a cell phone does not depend on whether the target offenses are

12

"internet crimes" like some fraud or "real life" crimes like robberies or gun offenses. *Nester*, 2024 WL 4615777, at *7. Thus, this Court has consistently upheld cell phone warrants, including "two-step" warrants, as sufficiently particular where, read as a whole, they limit the search to evidence of specific crimes. *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018); *Honeysucker*, 2023 WL 142265, at *4–5; *Richards*, 659 F.3d at 539–42.

Here, the warrant did expressly that—and more. First, it detailed the types of information on the phone that agents could seize and limited the scope to evidence of violations of the specified target offenses. (R.40-1: Warrant Attachments, 287–89). That was reasonable, because the agents at that stage "could not have known where this information was located in the phone or in what format." *Bass*, 785 F.3d at 1050; *Nester*, 2024 WL 4615777, at *5–7. For example, Tanzil did not tell agents where on his phone the evidence related to the fatal shooting was located, and they did not know where to find his communications with others—texts, calls, social media messages, etc. Moreover, the warrant went further and limited the search of incoming and outgoing calls and call logs to the three-month period over which Tanzil was

13

suspected of committing the target gun offenses. (R.40-1: Warrant Attachments, 287). This time limitation further particularized the warrant, beyond what this Court has required. *See, e.g.*, *Castro*, 881 F.3d at 965–96; *Honeysucker*, 2023 WL 142265, at *4–5; *Nester*, 2024 WL 4615777, at *6.

At bottom, Tanzil asks this Court to take an extreme view of particularity with respect to cell phone warrants based on an out-of-circuit case that is at odds with its precedent. (Tanzil Br., 22, 25 (citing *Burns v. United States*, 235 A.3d 758, 775–76 (D.C. 2020)). But even if this Court were to eschew its prior holdings and conclude that the warrant was overbroad, an "infirmity due to overbreadth does not doom the entire warrant." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). Instead, the remedy is to sever the offending portion, suppress only the evidence collected under it, and "admit the evidence collected under the valid portions that remain." *Castro*, 881 F.3d at 965. Tanzil provides no specifics about which portion(s) of the warrant he believes were overbroad. But he seems to concede, at the very least, that the photos on his phone and social media data were properly searched. (Tanzil Br., 27–28).

**II    Agents relied on the detailed federal warrant in good faith.**

Tanzil's good-faith argument hinges on his claim that the affidavit did not establish "a nexus between possessory firearms offenses and *everything* on the phone." (Tanzil Br., 35). That is wrong, for the reasons discussed above and in the government's opening brief. *See, e.g.*, *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (explaining that there "must be daylight" between the good-faith and probable-cause standards).

But the good-faith exception applies even if the affidavit did not establish probable cause to search Tanzil's "entire" cell phone, as he argues. (Tanzil Br., 36). This Court has repeatedly held that showing a "minimally sufficient nexus" is "a lower standard than the 'fair probability' needed to demonstrate nexus for purposes of probable cause," which itself requires "only a modest climb." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024); *United States v. Sanders*, 106 F.4th 455, 468–69 (6th Cir. 2024) (en banc) (good-faith exception applies where affidavit "presents a 'modicum of evidence, however slight,' showing '*some* connection, regardless of how remote it may have been'" between the criminal activity and location of the search). In fact, it has

15

upheld phone searches even where the warrant affidavit did not "directly implicate" the target phone with criminal activity, because it could "reasonably be inferred based on the affiant officer's 'training and experience,' 'consistent with common sense.'" *Smith*, 2022 WL 4115879, at *9 ("Smith and Walker both fired guns at the deceased (suggesting it was a coordinated attack), Smith possessed a loaded gun and two cell phones when he was arrested, and the affiant officer attested that in his 'training and experience' individuals involved in criminal activity regularly use their cell phones to plan or conceal crime" so an officer "could reasonably infer that Smith's cell phones contained communications with Walker regarding the . . . shooting.").

Tanzil makes several important concessions with respect to good faith, too. He agrees that, "[c]onsidering [Tanzil's] prior criminal history, attempts to purchase weapons, two shootings, and a fraud scheme, Tanzil looks every bit like someone police should investigate." (*Id.*, 27). He admits that the term bare bones "paints a stark picture" and so it is "understandable that the government points to the '30-page, 74-paragraph affidavit,'" which he concedes "has meat on the bones." (Tanzil Br., 34–35).

16

In admitting that there was probable cause to search at least some of the phone, Tanzil dooms his good-faith argument. He repeats that agents at least had the photos and Snapchat information and Tanzil's statements "to go on." (Tanzil Br., 36). But he claims, as the district court incorrectly did, that they should have drawn a distinction between inculpatory evidence and exculpatory evidence. (*Id.*). In the unlikely event that this is even a valid distinction, it would still be asking too much of non-lawyer agents and officers—especially given the duty of the government to investigate and produce exculpatory evidence. *See Sanders*, 106 F.4th at 470 ("[W]e do not ask nonlawyer officers to discern the fine legal distinctions between one case and the next, let alone take heed from those distinctions that the affidavit here was out of bounds."); *United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021) ("[H]ow can we expect nonlawyer officers to know better than judges that their affidavits do not suffice except in obvious cases?"). Moreover, Tanzil fails to consider the other detailed investigation outlined in the affidavit establishing probable cause that evidence would be found on his cell phone, including evidence of criminal coordination between him

17

and others and his successful acquisition of multiple guns over a short period, despite his prohibited status.

This Court has upheld far-less-detailed phone warrants based on good faith, and Tanzil's attempts to distinguish those cases fall short. (Tanzil Br., 36–37). First, this Court never addressed good faith in *Bass*, because it found that the warrant established probable cause. 785 F.3d at 1049–50. And in *Merriweather*, the Court upheld the warrant on good faith, even though (unlike here) the affidavit lacked any information tying the target phone recovered from Merriweather's car to evidence of criminal activity. *United States v. Merriweather*, 728 F. App'x 498, 505 (6th Cir. 2018). Indeed, the officers there only knew that Merriweather's *confederates* used cell phones to arrange drug deals, but the Court found an officer could reasonably infer that Merriweather conducted "illicit business" on his cell phone, too. *Id.* at 505. That is a far cry from Tanzil's case, where the warrant details specific information tying *his* phone to his gun crimes and outlines his own criminal coordination with others.

Tanzil does not even attempt to distinguish *Rolling*, where this Court acknowledged the "uncertainty" regarding nexus in the "phone-

18

search context" and thus held that an officer could rely on the warrant
in good faith. 2024 WL 4512532, at *4. And there the warrant only
"contained factual allegations that Rolling's car and Rolling himself had
been connected to several robberies committed with another person and
that the phone had been found in the car." *Id.* ("Even if the judge's
inference that the phone itself was used in planning or discussing the
robberies and would thus contain evidence of crime was too tenuous to
support a finding of probable cause, it was not too great a leap for good
faith reliance."). Tanzil's failure to address *Rolling* is likely because the
affidavit here established a far stronger link between Tanzil's phone
and evidence of the target offenses, and yet the warrant there was
upheld. The district court erred by finding that agents could not rely on
the detailed warrant in good faith.

# Conclusion

The district court's order suppressing evidence obtained from the federal search warrant should be reversed.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ Meghan S. Bean
Meghan Sweeney Bean
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0214
meghan.bean@usdoj.gov

Dated: July 30, 2025

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), it contains 3,823 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Meghan S. Bean
Assistant United States Attorney

Dated: July 30, 2025

21

## Certificate of Service

I certify that on July 30, 2025, I caused this Reply Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorneys of record:

Matthew Monahan, matthew_monahan@fd.org
Michael E. Carter, michael_carter@fd.org


/s/ Meghan S. Bean
Assistant United States Attorney