NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0534n.06

Case No. 25-1102

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 20, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff-Appellant, ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. ) | |
| JAMEEL ANTHONY DION TANZIL, ) | |
|     Defendant-Appellee. ) | OPINION |

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Jameel Tanzil is a convicted felon suspected of involvement in new crimes. Federal law enforcement personnel secured a warrant to search Tanzil's cell phone for evidence of those crimes. After a grand jury indicted Tanzil for being a felon in possession of ammunition, he challenged the validity of the warrant and sought to suppress the fruits of the resulting search. The district court agreed with Tanzil that the warrant lacked probable cause and granted his motion to suppress.

The government appealed. Its appeal sits at the center of a Fourth Amendment dispute this court has not resolved: What is the required probable-cause "nexus" for a warrant to search a cell phone? But we decline to resolve that issue here, because the officers who executed the warrant did so in good faith. Accordingly, we reverse on that basis and remand for further proceedings.

No. 25-1102, *United States v. Jameel Tanzil*

## BACKGROUND

**I.  Facts**

Jameel Tanzil has been convicted of four felonies since 2014. While on probation for those crimes, Tanzil became implicated in new criminal activity.

On October 28, 2023, someone shot and killed a sixteen-year-old girl in Pontiac, Michigan. A witness saw Tanzil firing a gun in the victim's direction. Officers arrested Tanzil and seized his iPhone. After Tanzil received his *Miranda* warnings, he admitted to handling guns "while filming a music video" earlier that month. RE 23-2, State Affidavit & Warrant, PageID 95. He also conceded that he was at the location of the fatal shooting but denied any involvement. Tanzil further claimed his cell phone contained information that showed he did *not* commit the shooting, but he refused to allow investigators to search his phone.

A month before the homicide, Tanzil participated in a separate shooting in the parking lot of a hookah lounge in Pontiac. Surveillance video footage showed Tanzil leaving the lounge with a gun in his hand and exchanging fire with another person before running away. Location information from Tanzil's GPS ankle tether also placed him at the scene of the shooting.

Separately from the shooting events, in August 2023, Tanzil attempted to buy four firearms from a coworker while on a shift break. Tanzil took photos of his coworker's guns on a cell phone and sent the pictures to a contact on the social media application Snapchat. Tanzil's coworker ultimately refused to sell him the guns after noticing Tanzil's GPS ankle tether and learning he was on probation. The next day, Tanzil's coworker discovered the guns had been stolen from his car. Because Tanzil was the only person who knew that the firearms were in his coworker's car, Tanzil became a suspect in the gun theft.

II.     **Procedural history**

As a felon, Tanzil cannot legally possess weapons or ammunition. *See* 18 U.S.C. § 922(g)(1). Following the criminal activity described above, law enforcement officers from the state of Michigan and the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) separately applied for warrants to search Tanzil's cell phone.

The state affidavit in support of the warrant explained that Tanzil was being investigated as a felon in possession of a firearm and sought extensive information from Tanzil's cell phone while making largely conclusory allegations in support of probable cause. The state court nonetheless issued the warrant.

The federal affidavit explained that Tanzil was under investigation for theft, fraud, and felon-in-possession crimes and sought access to Tanzil's cell phone. The affidavit described the Pontiac shootings, Tanzil's post-arrest statements to the police, and his use of Snapchat to share photos of guns with an associate. It detailed how cell phones contain location data that could help law enforcement pinpoint Tanzil's past movements. And it included information about earlier, unrelated insurance fraud tied to Tanzil's IP address. Additionally, the affiant described his experience with cell phone searches and how criminal suspects use cell phones for communication and coordination.

A federal magistrate judge granted the warrant, limiting the data that could be seized by time and relevance but otherwise allowing extensive access to the phone. The warrant authorized ATF to search and seize three months' worth of evidence from Tanzil's phone, including his call log, all bank and financial records, and the device's location data. It also permitted broad searches of Tanzil's internet history, texts, note-taking applications, social media, and social-messaging applications, "to the extent that they constitute[d] evidence of" the gun and fraud offenses. RE 40-

No. 25-1102, *United States v. Jameel Tanzil*

1, Fed. Warrant, PageID 287-89. Agents executed the warrant, and based on evidence discovered on his cell phone, a federal grand jury indicted Tanzil for being a felon in possession of ammunition.

Tanzil moved to suppress evidence recovered from the search of his cell phone. Relevant to this appeal, Tanzil claimed that the federal and state warrants lacked probable cause because they failed to establish a nexus between his cell phone and the crimes charged.

The district court granted Tanzil's motions to suppress evidence obtained from the federal and state warrants. The court found that both warrants lacked probable cause because they alleged no factual connection between Tanzil's phone and his purported criminal activity. The court also declined to apply the good-faith exception to the warrant requirement, finding that any objectively reasonable officer would have recognized the warrants' deficiency. The government now appeals the suppression of evidence derived from the federal warrant.

## ANALYSIS

**I.  Standard of review**

We have jurisdiction to hear the government's appeal. An "appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence," 18 U.S.C. § 3731, "provid[ing] the government with 'a one-party path for interlocutory review' of orders excluding evidence in criminal cases." *United States v. Musaibli*, 42 F.4th 603, 612 (6th Cir. 2022) (quoting *United States v. Clariot*, 655 F.3d 550, 552 (6th Cir. 2011)). We review a "district court's decision to suppress evidence by reviewing the court's factual findings for clear error and its legal determinations—including whether probable cause existed—de novo." *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018). And "[t]he district court's application

No. 25-1102, *United States v. Jameel Tanzil*

of the good-faith exception presents a legal question, which we review de novo." *United States v. O'Neill*, 94 F.4th 531, 538 (6th Cir. 2024).

## II. Probable cause

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause is a "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)). A "neutral, disinterested" judge may issue a warrant that "particularly describe[s] the things to be seized, as well as the place to be searched," so long as "those seeking the warrant . . . demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (citation modified). Under traditional probable cause analysis, the affidavit in support of a warrant must, under the "totality of the circumstances," lead a "reasonable and prudent" person to believe there is a "fair probability" that "contraband or evidence of a crime" will be found in a particular place. *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (quotation omitted). And because a magistrate judge's initial determination of probable cause receives "great deference," reviewing courts ask only whether the magistrate had a "substantial basis" for believing that the warrant satisfied the probable cause requirement. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

The mandate of interrelation "between the place to be searched and the evidence sought" is known as the "nexus" requirement. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). "The affidavit must establish a nexus . . . such that there is a substantial basis to believe that the

things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010).

Modern cell phones present unique challenges for courts analyzing the nexus requirement. After all, "our phones frequently contain information chronicling our daily lives—where we go, whom we see, what we say to our friends, and the like." *United States v. Griffith*, 867 F.3d 1265, 1268 (D.C. Cir. 2017). As a result, a suspect's phone "can serve as a fruitful source of evidence, especially if he committed the offense in concert with others whom he might communicate about it." *Id.* But the "pervasiveness" of cell phones distinguishes them from the "physical records" that animate traditional probable cause jurisprudence. *Riley v. California*, 573 U.S. 373, 395 (2014). Cell phones keep "a digital record of nearly every aspect of [our] lives" and are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id.* at 385, 395. Until the widespread use of cell phones, "people did not typically carry a cache of sensitive personal information with them as they went about their day." *Id.* at 395.

Due to the competing interests involved in cell phone searches, courts—including ours—have struggled to determine the proper standard for sanctioning government access to a suspect's phone. We have considered two potential nexus standards in the cell phone context. *See United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *3 (6th Cir. Oct. 17, 2024). One standard would require an affidavit to make "factual allegations" that the "[cell] phone [to be searched] *itself* is being used in connection with criminal activity." *Id.* at *3 (emphasis added) (quoting *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021)). An alternative standard mirrors the traditional probable cause inquiry, requiring an affidavit to allege a "fair probability" the phone "will aid in a particular investigation" and "disclose evidence of criminal activity." *Id.* But as in

*Rolling*, Tanzil's case can be resolved on the good faith exception, so "we need not decide today whether mere allegations of participation in criminal activity" suffice to find probable cause where factual evidence is otherwise thin. *Id.*

### III. Good faith

The district court should have denied Tanzil's suppression motion under the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). We reverse on this basis alone.

Under *Leon*, fruits of a warrant issued by a neutral magistrate but unsupported by probable cause will not be suppressed under the exclusionary rule if the executing officers acted in "reasonable reliance" on the warrant's validity with a good-faith belief that their actions were proper. *Id.* at 918-22. *Leon* includes four exceptions to its own good-faith rule. Suppression remains appropriate if: (1) the magistrate who issued the warrant was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role," such that "no reasonably well trained officer should" have relied on the warrant; (3) the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was so "facially deficient[,] i.e., in failing to particularize the place to be searched or the things to be seized" that no reasonable officer could believe it to be valid. *Id.* at 923 (quotation omitted).

The district court relied on the third *Leon* exception to determine that the warrant failed the good-faith test. Without further analysis or discussion, the court concluded that "an objectively reasonable law enforcement officer would have recognized [the] deficiency" in the warrant to search Tanzil's phone, rendering the "good-faith exception [] inapplicable." R. 47, Op. & Order,

No. 25-1102, *United States v. Jameel Tanzil*

PageID 369. But our caselaw requires a deeper inquiry into good faith, particularly when the facts are as "frothy" as they are here. *Rolling*, 2024 WL 4512532, at *4 (describing the difficulty of the *Leon* inquiry "where the challenged affidavit does not specifically allege a direct factual connection between [the place to be searched] and criminal activity") (quoting *United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021)).

Under *Leon*'s third exception, a warrant "so lacking in indicia of probable cause" is one that is "bare bones." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)). "A 'bare bones' affidavit states 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004) (quoting *Van Shutters*, 163 F.3d at 337). But a warrant is not "bare bones" if it alleges "a minimally sufficient nexus between the illegal activity and the place to be searched." *Carpenter*, 360 F.3d at 596. When there is a "modicum of evidence, however slight" that shows "*some* connection, regardless of how remote" between the criminal activity and search location, a "minimally sufficient nexus" exists. *United States v. Sanders*, 106 F.4th 455, 468-69 (6th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 603 (2024) (first quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017); then quoting *Carpenter*, 360 F.3d at 596).

The affidavit supporting the federal warrant for Tanzil's cell phone passes this test even if it were not enough to establish a substantial basis for probable cause. *See White*, 874 F.3d at 500 ("[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable."). The affidavit described Tanzil's own statements to officers about his recent handling of guns. It detailed his statement that his cell phone contained exculpatory evidence showing that he was not involved in the October 28th

homicide. It explained how cell phones like Tanzil's store location data that can be used to pinpoint the owner's movements. The affidavit also described Tanzil's Snapchat photographs of guns he attempted to purchase from a coworker—guns that were promptly stolen after the coworker refused to make the sale. And Tanzil himself admits on appeal that it was reasonable to infer that he used a cell phone to take Snapchat photos of the guns, and that evidence of those Snapchat photos would travel with the app even if the owner updated their phone. Finally, the ATF affiant detailed his "training and experience" with investigating evidence of criminal activity on seized electronic devices. RE 36-2, Fed. Affidavit, PageID 239.

Tanzil is correct that mere "meat on the bones" of an affidavit does not necessarily create a sufficient connection between the evidence sought, the place to be searched, and the relevant criminal activity. CA6 R. 16, Appellee Br., at 34. But here, Tanzil's own statements that *some* evidence relevant to the alleged crimes appeared on his cell phone, plus his concession that he took a photo of his coworker's guns on Snapchat shortly before they ended up stolen, demonstrate that a "nonlawyer" officer could have reasonably relied on the affidavit and resulting warrant for the phone. *Sanders*, 106 F.4th at 470. "[S]o long as the [affidavit's] factual content is not 'so vague as to be conclusory or meaningless,' that inference is sufficient to permit [good-faith,] reasonable reliance on the warrant," even in the absence of probable cause. *White*, 874 F.3d at 500 (quoting *Carpenter*, 360 F.3d at 595-96).

In sum, the factual allegations in the federal affidavit, read in the "totality of the circumstances . . . rather than a line-by-line scrutiny," surpass "bare bones." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). And although merely referencing an officer's training and experience is an "archetypal example[] of [a] bare-bones affidavit[]," the ATF affiant offered more than his credentials alone. *United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir.

No. 25-1102, *United States v. Jameel Tanzil*

2018). The affidavit provided some "factual allegations, not just suspicions or conclusions," connecting Tanzil's actions and admissions to the request to search his cell phone for evidence of the charged crimes. *Christian*, 925 F.3d at 313. So even if the warrant lacked probable cause, the good-faith exception applies.

## CONCLUSION

For these reasons, we reverse the district court's suppression order and remand for further proceedings.